**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-03824-REB

ENVIRONMENTAL DEFENSE FUND,

Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION,
BRIAN STONE, in his official capacity as the official performing the duties of Director of NSF,
OFFICE OF MANAGEMENT AND BUDGET, and
RUSSELL VOUGHT, in his official capacity as Director of OMB,

Defendants.

---

**DEFENDANTS' MOTION TO STAY DEADLINE TO RESPOND TO COMPLAINT AND FILE PROPOSED JOINT CASE MANAGEMENT PLAN**

---

Defendants respectfully move to stay their deadline to respond to the Complaint, ECF No. 1, and the parties' deadline to file a proposed Joint Case Management Plan, ECF No. 6, until 21 days after the court resolves a motion for vacatur and remand in a case that Plaintiff has identified as related to this one: *University Corporation for Atmospheric Research v. National Science Foundation, et. al.*, No. 26-cv-01061-RBJ (D. Colo.) ("*UCAR*"). *See* Notice of Related Case, ECF No. 2.

The motion for vacatur and remand in *UCAR* appears to concern the same agency actions that Plaintiff challenges here. If granted, the motion for vacatur and remand in *UCAR* would moot Plaintiff's claims or, at the very least, significantly narrow the scope of the claims. Thus, it would be inefficient for Defendants to respond to the Complaint, and for the parties to negotiate and prepare a Joint Case Management Plan,

before the court resolves the motion for vacatur and remand in *UCAR*. Indeed, the court has continued the government's deadline to respond to the operative complaint in *UCAR* until 21 days after the motion for vacatur and remand is resolved. Defendants ask that the Court do the same here.

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel has conferred with Plaintiff's counsel about the relief requested herein, and Plaintiff opposes a stay. Plaintiff intends to submit a response to this motion prior to the current responsive pleading deadline.

## BACKGROUND

Defendant National Science Foundation ("NSF") supports science and engineering in the United States "by awarding grants and entering into cooperative agreements with outside entities to promote scientific research and innovation across various fields and disciplines." *UCAR*, No. 26-cv-01061-RBJ, 2026 WL 2533392, at *1 (D. Colo. June 1, 2026). In 1960, NSF established the National Center for Atmospheric Research ("NCAR") "to promote research and innovation in the fields collectively known as the Earth system sciences." *Id*. NCAR is headquartered in Boulder, Colorado, at a facility known as the Mesa Laboratory. *Id.*; *see also* ECF No. 1 ¶ 5. NCAR has additional research facilities in other locations, including a supercomputing facility in Wyoming. *UCAR*, 2026 WL 2533392, at *1.

The University Corporation for Atmospheric Research is a non-profit consortium of colleges and universities. *Id.* at *2. NSF has a cooperative agreement with UCAR to operate and manage NCAR. *Id.* "Thus, while NCAR is formally constituted as a

separate entity, UCAR personnel administer NCAR and conduct its business on a day-to-day basis." *Id.*

**A. UCAR's Related Lawsuit**

Earlier this year, UCAR sued NSF, the U.S. Office of Management and Budget ("OMB"), and the National Oceanic and Atmospheric Administration ("NOAA"), among other federal agencies and officers, based on allegations that the federal government is "waging a campaign of retaliation against the State of Colorado and institutions within it," including NCAR. *See* First Am. Compl. ¶¶ 4, 7, ECF No. 54, *UCAR*, No. 26-cv-01061-RBJ (Aug. 26, 2026). UCAR identifies the following alleged retaliatory actions that the federal government has taken against it and NCAR: (1) "NSF's decision to divest UCAR of its stewardship of" NCAR's supercomputing center in Wyoming; (2) NOAA's termination of a multi-million-dollar cooperative agreement with UCAR to fund climate adaptation and mitigation research; (3) NSF's use of "disparate and undue reporting requirements calculated to saddle UCAR and NCAR with pointless bureaucratic burdens"; and (4) NSF's "imposition of gag orders" on UCAR and NCAR officials. *Id.* ¶ 8.

UCAR further alleges that "[t]he Agencies' ultimate apparent goal is to destroy NCAR entirely." *Id.* ¶ 9. This allegation is based on a "Dear Colleague Letter" that NSF issued on January 23, 2026, which "invited statements from parties interested in the management of NCAR's space weather activities, weather modeling capabilities, and atmospheric observation platforms." *Id.* The Dear Colleague Letter "also solicited interest in the ownership of NCAR's Mesa laboratory in Boulder for either private or public use." *Id.*

UCAR filed a motion for preliminary injunction concerning NSF's decision to divest UCAR of its stewardship of the NCAR's supercomputing center in Wyoming. *UCAR*, 2026 WL 2533392, at *1. In ruling on that motion, the court found, in relevant part, that on December 16, 2025, "OMB Director Russell Vought announced on social media that NSF 'will be breaking up' NCAR." *UCAR*, 2026 WL 2533392, at *3. The next day, NSF notified NCAR and UCAR that it would issue the Dear Colleague Letter described above, which NSF ultimately issued on January 23, 2026. *See id.* at *4. The court noted that NSF "indicated that [the Dear Colleague Letter] was part of its effort 'to restructure the research and observational capabilities of NCAR,'" but that NSF also "stated that it 'remained committed to providing world-class infrastructure for weather modeling, space weather research and forecasting, and other critical functions without disruption.'" *Id.* The court preliminarily enjoined NSF and OMB "from divesting UCAR or NCAR of any rights, resources, or responsibilities related to the" supercomputing center in Wyoming. *Id.* at *1, 15.

After the court issued the order granting preliminary relief, the government filed a Motion for Vacatur and Remand of Claims Brought Under the Administrative Procedure Act, and Request to Suspend Deadline to Answer APA Claims and Related Allegations in the First Amended Complaint (the "Motion for Vacatur"). ECF No. 57, *UCAR*, No. 26-cv-01061-RBJ (Sept. 24, 2026). That motion asks the court to vacate and remand the following decisions to the relevant agencies: (1) "NSF's alleged decision to transfer stewardship of the [Wyoming supercomputer center] or otherwise 'dismantle' NCAR"; (2) "NOAA's alleged termination of its cooperative agreement with UCAR relating to climate adaptation and mitigation research"; and (3) "the allegedly undue reporting

requirements." *Id.* at 7. The government explains that the agencies intend, among other things, to "formally retract the December 17, 2025, letter to UCAR and NCAR regarding NSF's intent to release the subject Dear Colleague Letter"; issue a new Dear Colleague Letter "that will expressly state that it supersedes" the one from January 2026; and that "NOAA will issue a new Notice of Award to UCAR . . . which will void the [prior] termination and reinstitute funding" for climate adaptation and mitigation research. *Id.* at 12. The government further explains that vacatur and remand "would provide [UCAR] the complete relief to which it would be entitled, if it were to prevail on final judgment on its APA claims." *Id.* at 14.

The court extended UCAR's time to respond to the Motion for Vacatur until November 16, 2026, and continued the defendants' time to respond to the operative complaint until 21 days after the court rules on the Motion for Vacatur. Minute Order, ECF No. 59, *UCAR*, No. 26-cv-01061-RBJ (Sept. 29, 2026).

**B. The Instant Lawsuit**

On August 20, 2026, the Environmental Defense Fund ("EDF") brought the instant lawsuit seeking "to enjoin Defendants' violations of the Administrative Procedure Act in seeking to eliminate climate research at NCAR and close the Mesa Lab." ECF No. 1 ¶ 6. EDF sues NSF, OMB, and the respective directors of those agencies.

EDF appears to identify the same alleged actions that are at issue in *UCAR* as the basis for its claims. *See* ECF No. 1 ¶¶ 58-67. Those actions include the OMB Director's December 16, 2025, social media post announcing that NSF would be "breaking up" NCAR, NSF's announcement the following day that it would be issuing the Dear Colleague Letter, and the January 23, 2026, Dear Colleague Letter. *See id.* EDF

claims that it will be harmed by the dismantling of NCAR because "EDF relies upon NCAR models, data, and facilities as part of its core, long-standing science initiative to understand and address climate pollution," among other things. *Id.* ¶ 78.

EDF asserts two claims under the Administrative Procedure Act: (1) a claim challenging Defendants' "categorical decision to end *all* of NCAR's climate research functions" as arbitrary, capricious, and an abuse of discretion, *id.* ¶¶ 91-104 (emphasis in original), and (2) a claim that Defendants acted arbitrarily, capriciously, and "without observance of procedure required by law" by failing to comply with the National Historic Preservation Act in purportedly deciding to close the Mesa Lab, *id.* ¶¶ 105-124.

EDF filed a Notice of Related Case explaining that this lawsuit is related to *UCAR* because "[a]ll four defendants in this case are also defendants in *UCAR*, and the two cases share common facts and claims." ECF No. 2 at 1. EDF further explained that both cases arise "from federal actions to restructure and rescope [NCAR] in Boulder, Colorado, by transferring, rescoping, and discontinuing NCAR programs and assets." *Id.*

The U.S. Attorney's Office for the District of Colorado was served on September 21, 2026, and thus Defendants' deadline to respond to the Complaint is November 20, 2026—four days after UCAR's deadline to respond to the Motion for Vacatur in the related case. *See* Fed. R. Civ. P. 12(a)(2) (United States agencies and officers must respond to a complaint within 60 days after service on the United States attorney).

## ARGUMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (citations omitted). A stay is warranted here because the pending Motion for Vacatur has the potential to dispose of EDF's claims, or at least significantly narrow the scope of any remaining claims.

In the absence of a stay, Defendants would need to proceed with a responsive pleading, which would likely require the parties to engage in briefing that could subsequently be rendered moot. The Court might also unnecessarily expend resources to evaluate that briefing and/or otherwise move this case forward. This is sufficient reason to stay the case until the Motion for Vacatur is resolved. See Fed. R. Civ. P. 1 (rules of civil procedure "should be construed, administered, and employed … to secure the just, speedy, and inexpensive determination" of a matter).

Plaintiff's counsel has indicated that EDF opposes a stay because the Motion for Vacatur does not include some of the decisions related to climate research funding that EDF challenges here. However, the Complaint does not identify any specific funding decisions that are not also at issue in *UCAR*. Rather, in designating this case as related to *UCAR*, EDF explained that both cases arise "from federal actions to restructure and rescope [NCAR] in Boulder, Colorado, by transferring, rescoping, and discontinuing NCAR programs and assets." ECF No. 2. And EDF relies on its allegations about the overarching plan to dismantle NCAR throughout the Complaint. For example, EDF explains that "Defendants OMB and NSF are engaged in an undertaking involving the Mesa Lab: the agencies' action to eliminate climate research at NCAR, close the Mesa Lab, and seemingly dismantle NCAR as an institution." *Id.* ¶ 114; *see also id.* ¶ 99 (referencing the "decision to eliminate *all* NCAR climate-related research functions and

shut down the Mesa Lab" (emphasis added)). It is simply not apparent from the Complaint that EDF challenges any specific funding decisions separate and apart from the overall alleged plan to dismantle NCAR.[1]

Even if EDF could point to specific agency actions described in the Complaint that are not covered by the Motion for Vacatur, that motion still has the potential to significantly narrow the scope of the claims in this case. For example, EDF's second claim relies on an allegation that the January 23, 2026, Dear Colleague Letter did not satisfy the requirements of the National Historic Preservation Act. *See* ECF No. 1 ¶ 121. But if the Motion for Vacatur is granted, NSF intends to retract the January 23, 2026, Dear Colleague Letter. Mot. for Vacatur and Remand at 12, ECF No. 57, *UCAR*, No. 26-cv-01061-RBJ (Sept. 24, 2026). Thus, this claim would either become moot or would need to be amended, and it would be inefficient and potentially wasteful for Defendants to respond to this claim at this juncture.

In addition to the Court's inherent power to control its docket, the factors that courts in this district consider in determining whether to stay proceedings strongly support a stay here. These include "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties

---

[1] In a section of the Complaint titled "The Trump Administration's Attacks on Climate Research," EDF alleges that "[i]n June 2025, NSF terminated more than 100 grants that fund research related to climate change." ECF No. 1 ¶ 49. However, EDF clarifies in a footnote that "[s]ome of the grants have been reinstated as a result of litigation challenging the NSF terminations." *Id.* n. 21. EDF does not specifically identify or describe any of the grants, nor does it allege that any of the grants involved NCAR. Moreover, EDF does not identify any of those grant terminations as the subject of its claims in this lawsuit.

to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).[2] Here, all of these factors favor granting the requested relief.

As for the first factor, a brief stay will not significantly prejudice EDF. UCAR's response to the Motion for Vacatur is due on November 16, 2026. Minute Order, ECF No. 59, *UCAR*, No. 26-cv-01061-RBJ (Sept. 29, 2026). Thus, the Motion for Vacatur is likely to be resolved in the near future. Moreover, the court in *UCAR* continued the deadline for the government to respond to the operative complaint in that case until 21 days after it resolves the Motion for Vacatur. *Id.* If UCAR—as the entity directly impacted by the relevant decisions—will not be prejudiced by continuing the responsive pleading deadline, then it is unclear how EDF would be prejudiced by an equivalent stay of the responsive pleading deadline here.

As for the second and third factors, engaging in substantive briefing at this stage would impose expenses and burdens on Defendants and the Court that may prove unnecessary if the Motion for Vacatur is granted. And a brief stay pending resolution of the Motion for Vacatur will not negatively impact the Court's management of its docket because a Joint Case Management Plan has not yet been entered. Therefore, these factors also weigh in favor of a stay. *See Said*, 2020 WL 9432922, at *4 (finding that a stay "would conserve judicial resources in that the precise contours of the action" were then unknown due to ongoing administrative proceedings).

---

[2] Although *String Cheese* concerned a motion to stay discovery, courts in this district often apply these factors to analyze motions to stay proceedings generally. *See, e.g.*, *Said v. U.S. Dep't of Homeland Sec.*, No. 20-cv-02316-CMA-NYW, 2020 WL 9432922, at *2-3 (D. Colo. Nov. 3, 2020) (using the *String Cheese* factors to analyze a motion to stay proceedings filed before the defendants responded to the complaint).

With respect to the fourth factor, a stay will allow the Court and the Department of Justice—publicly-funded entities—to "focus their efforts on matters more pressing" than briefing and resolving preliminary motions in a case that may be dismissed. *See Green v. Napolitano*, No. 11-cv-01163WYD-KMT, 2011 WL 3583402, *1 (D. Colo. Aug. 15, 2011).

Finally, the fifth factor weighs in favor of a stay. The public's interest in this case "is a general interest in its efficient and just resolution," and "[a]voiding wasteful efforts by the Court and litigants serves this interest." *Cole v. JPMorgan Chase Bank, N.A.*, No. 12-cv-01452-REB-KLM, 2014 WL 4393545, at *3 (D. Colo. Sept. 4, 2014).

In sum, a stay would further the interests of efficiency and judicial economy, and all of the *String Cheese* factors weigh in favor of granting the requested relief.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court stay their deadline to respond to the Complaint, ECF No. 1, and the parties' deadline to file a proposed Joint Case Management Plan, ECF No. 6, until 21 days after the court resolves the Motion for Vacatur and Remand in *University Corporation for Atmospheric Research v. National Science Foundation, et. al.*, No. 26-cv-01061-RBJ (D. Colo.).

Respectfully submitted this 6th day of November, 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/* Jennifer R. Lake
***Jennifer R. Lake***
U.S. Department of Justice
Energy and Natural Resources Division
Natural Resources Section
999 18th Street, North Tower, Suite 600

Denver, CO 80202
Tel: (202) 826-7079
E-mail: jennifer.lake2@usdoj.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all registered counsel of record.

*/s/* Jennifer R. Lake___________
***Jennifer R. Lake***
U.S. Department of Justice